FILED
2015 Aug-11  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIVISION OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-138-TMP |
| ) | |
| BENNYE T. PUGH, ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. BANCORP; U.S. BANK NATIONAL ASSOCIATION; and U.S. BANK HOME MORTGAGE, ) | |
| ) | |
| Counterclaim Defendants. ) | |

## MEMORANDUM OPINION

This cause is before the court on the cross motions for summary judgment (docs. 13, 15) filed December 29, 2014, by the plaintiff, Federal Home Loan Mortgage Corporation ("FHLMC"), and by the defendant/counterclaimant, Bennye T. Pugh.   The action arises from the 2011 foreclosure of a home purchased by Pugh

in 2005.   After purchasing the home at the foreclosure sale, FHLMC filed this action in state court in November 2012, seeking ejectment after Pugh remained in the home after the foreclosure sale and after her subsequently signed lease agreement expired.   The action was removed to this court on January 23, 2014, on the basis of federal question jurisdiction after the plaintiff filed counterclaims arising under federal law.   FHLMC seeks summary judgment on its claim for ejectment, and, along with the counterclaim defendants (collectively "U.S. Bank"), on all of the counterclaims asserted by the defendant, arguing that the claims are without merit. Pugh seeks summary judgment on her claims for breach of contract and wrongful foreclosure.[1]

---

[1]   Pugh's motion seeks summary adjudication of her claims for "breach of contract and wrongful foreclosure." (Doc. 16, p. 2).  She also asks for a "declaration that the foreclosure is null and void."  Id.   Additional counterclaims set forth in the Amended Answer and Counterclaim (doc. 2) are for negligence; wantonness; unjust enrichment; abuse of process; slander of title; negligent and/or wanton hiring, supervision, and/or training; intentional and/or malicious conduct; trespass; declaratory judgment; violation of the Truth in Lending Act; violation of the Real Estate Settlement Procedures Act; and violation of the Fair Debt Collection Practices Act.  Her response to the plaintiff's motion for summary judgment discusses the alleged breach of contract, which she argues is evidence that the foreclosure was wrongful and entitles her to a declaration that the foreclosure is null and void.  Her response does not address any of the plaintiff's and counterclaim defendants' arguments relating to any of the other eleven counts contained in her Amended Answer and Counterclaim.  Pugh has effectively abandoned these additional counterclaims.

The motions for summary judgment have been fully briefed.  The parties have consented to the full dispositive jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(c).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.

There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function

of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.   Anderson, 477 U.S. at 255.   The non-movant need not be given the benefit of every inference but only of every reasonable inference.   Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## FACTS

For purposes of determining the defendant's motion for summary judgment on the ejectment claim and Ms. Pugh's affirmative defense that the Mortgage is void, the following facts are undisputed:

On August 24, 2005, Ms. Pugh purchased a house located on Willow Glen Drive in Birmingham, Alabama.   She obtained two loans to finance the purchase, only one of which is at issue in this case.   She signed a promissory note for $99,120.00, with an interest rate of 6.25% per annum for a 30-year term ("the Note").   The Note was assigned to counterclaim defendant U.S. Bank.   On the same date, Ms. Pugh executed a mortgage securing the Note ("the Mortgage").   U.S. Bank serviced the Mortgage and collected Ms. Pugh's mortgage payments.   When

Ms. Pugh entered into the Mortgage she understood that U.S. Bank could foreclose

and sell the property if she defaulted on her payment obligations.

The Note contains the following provision at paragraph 6(c):

If I am in default, the Note Holder may send me a written notice
telling me that if I do no pay the overdue amount by a certain date, the
Note Holder may require me to pay immediately the full amount of the
Principal which has not been paid and all the interest that I owe on that
amount.   That date must be at least 30 days after the date on which the
notice is mailed to me or delivered by other means.

The Mortgage contains the following provision at paragraph 22:

Acceleration; Remedies.   Lender shall give notice to Borrower
prior to acceleration following Borrower's breach of any covenant or
agreement in this Security Instrument (but not prior to acceleration
under Section 18 unless Applicable Law provides otherwise).   The
notice shall specify: (a) the default; (b) the action required to cure the
default; (c) a date, not less than 30 days from the date the notice is given
to the Borrower, by which the default must be cured; and (d) that failure
to cure the default on or before the date specified in the notice may
result in acceleration of the sums secured by the Security Instrument
and sale of the Property.   The notice shall further inform the Borrower
of the right to reinstate after acceleration and the right to bring a court
action to assert non-existence of a default or any other defense of
Borrower to accelerate and sale.   If the default is not cured on or before
the date specified in the notice, Lender at its option may require
immediate payment in full of all sums secured by this Security
Instrument without further demand and may invoke the power of
expenses incurred in pursuing the remedies provided under Section 22,
including, but not limited to, reasonable attorneys' fees and costs of title
evidence.

In April 2008, Ms. Pugh entered into a modification of the Note.   Under the 2008 modification, Ms. Pugh's delinquent payments were incorporated into a new principal balance of $101,499.89, and the maturity date was extended to May 1, 2038.   Her interest rate remained at 6.25 percent.

Ms. Pugh again defaulted on her mortgage at some time after 2008, and applied for another modification.   In September 2009, Ms. Pugh and U.S. Bank entered into a modification of her mortgage loan under the Home Affordable Modification Plan ("HAMP").   The HAMP modification incorporated unpaid amounts on the Note into a new principal balance of $107,200.37.   The interest rate was set at 4.5 % for the first five years, and at 5 % thereafter.   The maturity date was extended until April 1, 2039.

Pugh did not make a mortgage payment in August 2010, September 2010, or October, 2010.   On August 23, 2010, U.S. Bank sent Pugh a letter that informed her that she was "in breach of the mortgage for your failure to pay the monthly installments due."   (Doc. 13-3, Ex. A).   The letter informed her that she could cure the breach by sending certified funds of $1,478.54 for payments and $27.60 for late charges, plus any additional payments that come due, within 30 days of the date of

the letter.   The letter also warned: "If you fail to bring this account current, the full balance of the loan will be accelerated."   Id.   The letter informed her of the right to reinstate the Mortgage after acceleration, and the right to assert in any foreclosure action the non-existence of default or any other defense.   Id.   Ms. Pugh does not recall receiving that letter.   (Depo. of Pugh, Doc. 13-1, pp. 22-23).   During that time, however, she understood that she was behind on her mortgage payments.   Id.   She frequently talked on the telephone with both a credit counselor and U.S. Bank between June 2010 and August 2011.   Id.

On September 30, 2010, U.S. Bank sent Ms. Pugh a letter stating that "There may be alternatives available to you when your mortgage is delinquent and foreclosure is imminent," and suggesting that she call the number provided for "one of our loan workout programs."   (Doc. 13-2, p. 45).   She recalls that she received that letter.   (Depo. of Pugh, Doc. 13-1, p. 23).   At that time she was "working [with U.S. Bank and a credit counselor] to prevent foreclosure."   Id.

On November 10, 2010, an attorney from Sirote & Permutt, representing U.S. Bank, sent Ms. Pugh a letter stating that Ms. Pugh was in default of the terms of the Note and Mortgage, and that U.S. Bank accelerated to maturity the entire unpaid balance of the debt on the Note.   (Doc. 13-4, Ex. A).   The letter specifically stated

that it was a "NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE."   Id.   The letter further informed Ms. Pugh that, as of the date of the letter, her payoff amount was $110,355.43.   Id.   Ms. Pugh "thinks" she received the letter, and she understood what the letter meant, which is that "they were going to – going to foreclose."   (Depo. of Pugh, Doc. 13-1, p. 24).

More than seven months later, on June 29, 2011, the attorney from Sirote & Permutt sent Ms. Pugh a letter which stated that the last payment received from Ms. Pugh was on May 5, 2010, and that the "total amount necessary to reinstate this loan through June 30, 2011, is $9,526.60."   (Doc. 13-2, pp. 55-56).   The letter also noted that she would be notified "once a foreclosure sale is scheduled."   Id.   Ms. Pugh received the letter, and talked with her credit counselor and with U.S. Bank about being "reviewed" for another loan modification.

On July 6, 2011, another "NOTICE OF ACCELERATION" letter was sent to Ms. Pugh, notifying her of her default and advising her that "the foreclosure sale is scheduled for August 8, 2011."   (Doc. 13-4, Ex. B).   Ms. Pugh was advised: "If you wish to avoid losing the property, you must contact us immediately; otherwise, the foreclosure sale will take place as set forth ... and we will take legal action to obtain possession of the subject property."   Id.   Notice of the foreclosure sale was

published in the <u>Alabama Messenger</u> on July 9, 2011, July 16, 2011, and July 23, 2011.  (Doc. 13-4, Ex. B).  Ms. Pugh received the letter, but did not receive the enclosed notices of publication; however, she understood that the foreclosure sale had been scheduled.  (Depo. of Pugh, Doc. 13-1, pp. 30-31).  She called her credit counselor, who said the house would be foreclosed on.  The credit counselor advised her to go ahead and move out of the house.  <u>Id.</u>  Ms. Pugh talked with someone on the phone at U.S. Bank at some time in July 2011, who told her she still was "under review," and "nothing would happen while you're under review."  <u>Id.</u> at p. 33.

On July 8, 2011, U.S. Bank sent Ms. Pugh a letter that stated that she was "being reviewed for default resolution workout options."  (Doc. 13-2, p. 61).  The letter also advised that "foreclosure activity will continue."  <u>Id.</u>  Ms. Pugh received that letter, and understood that her loan was in active foreclosure at that time. (Depo. of Pugh, Doc. 13-1, p. 32).

On August 9, 2011, the attorney from Sirote & Permutt sent a certified mail letter to Ms. Pugh titled "DEMAND FOR POSSESSION."  The letter informed her that the property had been foreclosed, and that FHLMC was the new owner of the property; it further directed her to deliver possession to the new owner within 10

days.   (Doc. 13-4, Ex. C).   Ms. Pugh received the letter, but did not move from the house.   (Depo. of Pugh, Doc. 13-1, p. 33).

On August 12, 2011, attorneys representing FHLMC sent Ms. Pugh a letter offering her two options: (1) a cash payment toward relocation expenses if she would vacate the property and take all of her personal belongings, or (2) a chance to remain in the house by entering into a month-to-month lease agreement.   (Doc. 13-2, pp. 68-69).   She entered into a lease agreement in September, 2011.   (Depo. of Pugh, Doc. 13-1, p. 36).   She continued to live in the house, and she paid rent in the amount of $690 each month for a year.   Id.

On October 22, 2012, FHLMC terminated the lease by sending Ms. Pugh a letter.   (Doc. 13-2, p. 73).   The letter notified Ms. Pugh that FHLMC "now owns the property" at   2040 Willow Glen Drive, and that attorneys had been retained to "proceed with an eviction proceeding."   Id.   FHLMC stated in the letter that the lease was terminated "effective 30 days from October 22, 2012."   Ms. Pugh did not understand that FHLMC owned the house.   (Depo. of Pugh, pp. 36-37).   FHLMC filed the instant action for ejectment on November 26, 2012.   Ms. Pugh, as of the date this matter was briefed, remained in the house, and had made no further payments.

**DISCUSSION**

### A.  Ejectment

Plaintiff FHLMC seeks summary adjudication of its claim for ejectment. Ms. Pugh has responded that FHLMC is not entitled to judgment because it cannot show that U.S. Bank, the servicer of the note and mortgage, complied with "the terms of the 'Note' at paragraph 6(c), and paragraph 22 of the Mortgage." (Doc. 21, p. 1).  FHLMC asserts that it has produced all the documents necessary to demonstrate an entitlement to ejectment, and that Ms. Pugh has failed to demonstrate any defect in the foreclosure process that would impair FHLMC's title.

Under Alabama law, a plaintiff proves a *prima facie* case for ejectment by producing a "true and correct copy of the foreclosure deed and a demand for possession letter."  Berry v. Deutsche Bank National Trust Co., 57 So. 3d 142, 145 (Ala. Civ. App. 2010).  The purchaser of a property at a foreclosure sale is entitled to immediate possession of the property sold, "subject only to the right of redemption."  Palmer v. Resolution Trust Corp., 613 So. 2d 373, 375 (Ala. 1993). Once a *prima facie* case is set forth, the burden shifts to the defendant to "produce substantial evidence that there was a wrongful foreclosure" such that the plaintiff is

estopped from contending that it has a valid title to the property.   Berry, 57 So. 3d at 145.

The Alabama Court of Civil Appeals has determined which defects in a foreclosure process can provide a valid defense to an action for ejectment,[2] stating:

> In Alabama, the following circumstances may render a foreclosure sale void: (1) when the foreclosing entity does not have the legal right to exercise the power of sale, as, for example, when that entity is neither the assignee of the mortgage, nor the holder of the promissory note, at the time it commences the foreclosure proceedings; (2) when "the debt secured by the mortgage was fully paid prior to foreclosure"; (3) when the foreclosing entity failed to give notice of the time and place of the foreclosure sale, ... and (4) when the purchase price paid is "'so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.'"

Campbell v. Bank of America, N.A., 141 So.3d 492, 495-96 (Ala. Civ. App. 2012)(internal citations omitted).

---

[2]   In an ejectment action, where there is a collateral attack on the foreclosure process, only a wrongful foreclosure that renders the sale void – as opposed to merely voidable –   can overcome the right to assert ejectment.   Campbell v. Bank of America, N.A., 141 So.3d 492, 495 (Ala. Civ. App. 2012).   As to plaintiff FHMLC, the attack on the foreclosure process is a collateral attack asserted as a defense to the ejectment action.   In her counterclaims against the U.S. Bank entities, Ms. Pugh attempts to directly attack the foreclosure proceedings.   Those claims will be addressed infra.

In this case, FHLMC has provided authenticated copies of the mortgage, the foreclosure deed, the special warranty deed, and the demand for possession. Moreover, FHLMC has demonstrated that the foreclosing entity, U.S. Bank, had the legal right to sell the properly as the assignee of the Mortgage and the holder of the Note. Ms. Pugh does not argue that the mortgage was paid in full prior to foreclosure. To the contrary, she concedes that she had not made a mortgage payment in over a year. She admits that she received timely notice of the time and place of the foreclosure sale, and she raises no issue that the purchase price paid by FHLMC was in any way inadequate.

Because FHLMC has established that it has superior title to the property, and has a right to immediate possession, the burden of proving the invalidity of the foreclosure and FHLMC's entitlement to possession of the property shifts to Ms. Pugh to show by substantial evidence some invalidity in the process.

**B. Wrongful Foreclosure and Breach of Contract**

Defendant/Counterclaimant Pugh seeks summary adjudication in her favor on her counterclaims for wrongful foreclosure, breach of contract, and a declaration that the foreclosure sale is void. In her counterclaims against U.S. Bank, and as defenses against the ejectment claim, Ms. Pugh asserts that the foreclosure was wrongful in that U.S. Bank failed to give her notice of the intent to accelerate as

required under paragraph 22 of the Mortgage.   In her brief in support of the motion, Ms. Pugh simply alleges that "[t]he lender/successor failed to give notices as required by the contract (Note and Mortgage)."   (Doc. 15, p. 3).   She further argues that "[n]either the lender nor its servicer provided a Notice of Intent to Accelerate the Debt as required by the Contract."   <u>Id.</u> at pp. 3-4.[3]

In support of her argument that the counterclaim defendants breached the contract and wrongfully foreclosed, she simply states that no Notice of Intent to Accelerate was provided.   She does not provide any affidavit or other evidence establishing that she did not receive such notice; she does not assert that the address used for correspondence from the lender, servicer, or attorneys was not her correct address; nor does she point to any facts that would dispute the clear evidence that the letter dated August 23, 2010 (doc. 13-3, Ex. A, p. 5) was mailed to her at her home

---

[3]   Ms. Pugh also makes a passing reference to paragraph 6(c) of the Note as a basis fro her claim of breach of contract, but she makes an argument only in support of the assertion that the plaintiff and counterclaim defendants violated paragraph 22 of the Mortgage.   For example, her argument consists of a long quotation from <u>Jackson v. Wells Fargo Home Mortgage</u>, 90 So. 3d 168 (Ala. 2012), which is focused exclusively on language identical to paragraph 22 at issue in the instant case.   Nothing in the quotation or her argument sets forth the contention that paragraph 6(c) of the Note provides an independent basis for relief.   Moreover, any argument that the plaintiff and counterclaim defendants failed to comply with paragraph 6(c) is factually unsupported.   Plaintiff and counterclaim defendants have offered an authenticated copy of a letter mailed to Ms. Pugh on August 23, 2010, notifying her that she was in default under the Note, and giving her thirty days to cure the default.   (Doc. 13-3, Ex. A).   Because defendant was given notice of default under paragraph 6(c), that claim of a breach of contract is meritless.

address.[4]   The August 23 letter not only notified her of the default, but plainly

stated, "If you fail to bring this account current, the full balance of the loan will be

accelerated."   The letter is authenticated by the affidavit of Leanne Little, who

testified that the letter was kept in the ordinary course of business at U.S. Bank, and

that U.S. Bank records reflect that the letter was sent on August 23, 2010, via first

class mail, to Ms. Pugh at the correct address of the Property.   Ms. Pugh does not

even rely upon her own testimony (a copy of which was provided by the plaintiff), in

which she stopped short of asserting that she did not receive the letter.   Instead, she

testified that she did not recall whether she received the letter.   (Depo. of Pugh,

Doc. 13-1, pp. 22-23).   Her failure to recall receiving the letter, where evidence

shows that the letter was sent, does not create a genuine issue of material fact as to

whether the letter was sent.[5]

---

[4]     While the court must view the facts in the light most favorable to Ms. Pugh in
determining FHLMC's motion, the facts are viewed in the light most favorable to FHLMC for
purposes of Ms. Pugh's motion.   Accordingly, even for purposes of the plaintiff's motion, the
court must assume that the letter of notice of intent was mailed, but that Ms. Pugh does not recall
whether she received the letter.   In any event, she has the burden of proving an invalidity in the
foreclosure process, which her failure recall simply cannot carry.

[5]     The contractual provisions cited by Ms. Pugh require that the Note holder "send [her] a
written notice" and that the notice be "mailed" or "delivered by other means."   There is no
requirement, and no allegation, that the letter be sent by certified mail, or that the receipt of the
letter be verified in any way.   In this case, U.S. Bank has demonstrated that it mailed a written
notice to Ms. Pugh within the time frame set forth. While it could be true that the letter was never
received, it is the act of sending the letter that fulfills the contractual obligation.   See Jackson v.

The only law cited by Ms. Pugh in support of her motion is <u>Jackson v. Wells Fargo Bank, N.A.</u>, 90 So. 3d 168 (Ala. 2012) ("<u>Jackson I</u>").  That case does stand for the proposition that the failure to send a notice of intent to accelerate can be a breach of contract where the contract contains a provision virtually identical of Paragraph 22 of the instant Mortgage.  However, the basis for the decision in that case rests upon the absence of any evidence that such a notice of intent was ever sent.  Ms. Pugh fails to address the ultimate disposition of that issue.  After the state supreme court in <u>Jackson I</u> reversed the summary judgment that was issued in favor of the foreclosing bank because the bank had failed to submit any evidence that the notice of intent was sent, the case was remanded, and the bank filed a new motion for summary judgment.  This time the motion was accompanied by a copy of the notice of intent, with evidence that the requisite notice was mailed to the borrower's address.  <u>Jackson v. Wells Fargo Home Mortgage, N.A.</u>, 159 So. 3d 58 (Ala. Civ. App. 2014)("<u>Jackson II</u>").  The court held that the letter provided ample evidence to support the summary adjudication in favor of the bank, even though the borrowers asserted that they did not receive the letter.   159 So. 3d at 62-63.

---

<u>Wells Fargo Home Mortgage</u>, 159 So. 3d 58, 66 (Ala. Civ. App. 2014) (holding that evidence that mortgagor did not *receive* a letter failed to create genuine issue regarding the *mailing* of the letter).

In this case, the August 23 letter is in the record, proving notification to Ms. Pugh of U.S. Bank's intention to accelerate the Note balance if the default was not cured.   The default was not cured, and the Note was accelerated on November 10, 2010.   Ms. Pugh's allegation that she does not recall receiving the letter does not entitled her to summary judgment in her favor on the breach of contract claim, or on the claim for wrongful foreclosure.   Accordingly, Ms. Pugh's motion for summary judgment on the wrongful foreclosure claim, the breach of contract claim, and her claim for a declaratory judgment is due to be denied.   Likewise, because she has failed to show any invalidity in the foreclosure process, plaintiff's motion for summary judgment on its ejectment claim is due to be granted.

### C. Counterclaims

Distinct from claims related to the foreclosure of the Mortgage, Ms. Pugh also has asserted a number of additional claims.   The counterclaim defendants seek summary adjudication on all of Ms. Pugh's counterclaims.   They assert that Ms. Pugh has failed to show that the contract was breached, or that the foreclosure was wrongful.   They assert that the TILA, RESPA, and FDCPA claims are time-barred and are without merit; that the negligence and wantonness claims are without merit because there was no duty owed and because there is no evidence that the foreclosure was held for any purpose other than to secure repayment of the debt; and

that Ms. Pugh cannot prove elements of her claims for unjust enrichment, abuse of process, slander of title, negligent hiring, intentional or malicious conduct, or trespass.   In the absence of any evidence of wrongful foreclosure, they argue, the claim for declaratory judgment also is due to be dismissed.   The counterclaim plaintiff has failed to offer any evidence or argument in response to these arguments. Her brief focuses only on the breach of contract and wrongful foreclosure claims. (Doc. 21).

      1.   *TILA, RESPA, and FDCPA*

The counterclaims asserting violations of TILA and RESPA arise from the execution of the Note and Mortgage in August 2005.   The counterclaim defendants point out that TILA requires that claims be brought "within one year from the date of the occurrence of the violation" pursuant to 15 U.S.C. § 1640(e).   Similarly, RESPA requires that claims be brought within one year.   See, *e.g.*, Smith v. Ocwen Financial, 488 Fed. App'x 426 (11th Cir. 2012).   The counterclaim asserting violations of FDCPA is based on actions that occurred no later than 2011.   The counterclaim defendants point out that FDCPA imposes a similar one-year statute of limitations.   15 U.S.C. § 1692(k)(d).   This conclusion is supported by Eleventh Circuit law.   See, *e.g.*, Coursen v. Shapiro, 588 Fed. App'x 882, 885-86 (11th Cir. 2014).

The court agrees that all of Ms. Pugh's claims arising under the federal statutes are time-barred, and that the counterclaim defendants are entitled to summary judgment in their favor on these claims.[6]

### 2. *Negligence and Wantonness*

U.S. Bank asserts that the negligence and wantonness claims, to the extent that they refer to conduct relating to the foreclosure, are subsumed into the wrongful foreclosure claim, as determined by the Alabama Supreme Court in <u>Jackson</u>, 90 So. 3d at 170. The court agrees, and the only other claims of negligence or wantonness relate to the servicing of the mortgage or the handling of payments. The last payment made on the mortgage was processed in May 2010. Alabama law dictates that such claims are barred by the two-year statute of limitations governing a negligence action. Alabama Code  § 6-2-38(l). Furthermore, such claims are not viable because "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing." <u>Blake v. Bank of American, N.A.</u>, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012). Finally, the wantonness claim also must fail because Ms. Pugh has admitted that she has no evidence that the actions taken by

---

[6]   Because they are time-barred, the court need not address them on the merits, but does note that the counterclaim complaint appears to be a mere recitation of TILA, RESPA, and/or FDCPA terms without sufficient factual allegations to sustain them.

U.S. Bank were motivated by any ill will, and that the actions were taken only in an effort to collect the debt she owed.   (Depo. of Pugh, Doc. 13-1, pp. 4-5).   For all of these reasons, U.S. Bank's motion for summary judgment is due to be granted, and the claims of negligent or wanton conduct are due to be dismissed.

### 3.   *Intentional Conduct, Abuse of Process, and Slander of Title*

Ms. Pugh has asserted several intentional torts, including "intentional conduct or maliciousness," abuse of process, and slander of title.   U.S. Bank alleges that there is no recognized tort in Alabama of "intentional conduct or maliciousness." The court agrees.   To the extent that Ms. Pugh may be attempting to state a claim for intentional infliction of emotional distress, the conduct complained of is simply insufficient to sustain such a claim.   See, *e.g.*, Little v. Robinson, 72 So. 3d 1168, (Ala. 2011), citing American Road Serv. Co. v. Inmon, 394 So. 2d 361 (Ala. 1980) (noting that outrage applies only to "unprivileged, intentional or reckless conduct of an extreme and outrageous nature" and is an "extremely limited cause of action"). Even if a tort for "intentional conduct" exists under Alabama law, each of the claims discussed herein requires as an element a showing that the actor possessed some malice or ill will.[7]   In this case, Ms. Pugh has testified that she has no evidence that

---

[7]   The elements of an abuse of process claim are: "1) the existence of an ulterior purpose; 2) a wrongful use of process; and 3) malice.   Kizer v. Finch, 730 So. 2d 1197, 1200 (Ala. Civ.

any party acted maliciously or with ill will.   (Depo. of Pugh, Doc. 13-1, pp. 4-5).

Accordingly, all of the claims asserting intentional or malicious conduct, including

her claim for slander of title and abuse of process, are due to be dismissed.

### 4. *Unjust Enrichment*

U.S. Bank seeks summary adjudication of the unjust enrichment claim

because Ms. Pugh has conceded that she did not pay any money to U.S. Bank that

she did not owe pursuant to her Note and Mortgage.   (Depo. of Pugh, Doc. 13-1, p.

40).   Similarly, the only payments made to FHLMC were made pursuant to the

lease agreement that she entered into after the foreclosure sale.   Under Alabama

law, an unjust enrichment claim requires a showing that the defendant "holds money

which, in equity and good conscience, belongs to the plaintiff or holds money which

was improperly paid to defendant because of mistake or fraud."   Federal Home

Loan Mortgage Corp. v. Anchrum, 2015 WL 2452775 (N.D. Ala. May 22, 2015),

citing Dickinson v. Cosmos Broad. Co., 782 So. 2d 260, 266 (Ala. 2000) (quoting

Hancock–Hazlett Gen. Constr. Co. v. Trane Co., 499 So. 2d 1385, 1387 (Ala.1986)).

The court in Anchrum discussed that the very essence of an unjust enrichment claim

---

App. 1998), citing Caldwell v. City of Tallassee, 679 So. 2d 1125 (Ala. Civ. App. 1996).
Similarly, elements of a slander of title claim include falsity and a malicious intent motivating the
publication of the false information.   Roden v. Wright, 646 So. 2d 605, 611 (Ala. 1994).   In this
case, Ms. Pugh admits that she was in default, that the purpose behind the foreclosure was to
collect the debt, and that she has no evidence of malice or ill will.

is that the defendant obtained money through some wrongful means, and that to keep the money would be unjust to the plaintiff.   Here, Ms. Pugh simply made some -- though certainly not all -- of the mortgage payments that she owed pursuant to the Note and Mortgage.   She then made rent payments that she owed under the lease agreement that she entered after she refused to vacate the premises after the foreclosure sale.[8]   She does not allege that the payments were obtained through any fraud or deception.   (Depo. of Pugh, Doc. 13-1, pp. 35, 40).   Ms. Pugh has failed to demonstrate that any payments received by U.S. Bank or FHLMC did not comport with her contractual obligation to pay; accordingly, the motion for summary judgment is due to be granted in favor of the counterclaim defendants.

### 5.  *Negligent Hiring*

Ms. Pugh asserts as a counterclaim against U.S. Bank that the company "hired, supervised, and/or trained incompetent agents or employees who committed some or all of the wrongful acts."  (Doc. 2, p. 11).   As U.S. Bank points out, this claim must fail if Ms. Pugh has failed to demonstrate that any agent or employee of

---

[8]   It has also been argued, and there is authority to support the proposition, that claims arising under a mortgage or other contract are governed by contract law, and equitable relief cannot be granted under the unjust enrichment theory.  *See, e.g.*, 946 F. Supp. 2d 1224, 1230-31 (N.D. Ala. 2013), citing Vardaman v. Florence City Board of Educ., 544 So. 2d 962, 965 (Ala. 1989).   Insofar as Ms. Pugh argues that plaintiff or counterclaim defendants enriched themselves by taking her real property, this is another attempt to argue the invalidity of the foreclosure. There simply is no evidence that the foreclosure was wrongful or defective.

U.S. Bank is liable for any underlying tort.   See, *e.g.*, McCaulley v. Harvard Drug Group, LLC, 992 F. Supp. 2d 1192 (N.D. Ala. 2014); Buckentin v. SunTrust Mortgage Corp., 928 F. Supp. 2d 1273, 1288 (N.D. Ala. 2013).   In order to establish this claim, Ms. Pugh must be able to offer substantial evidence that some employee of U.S. Bank committed a tort against her.   IN the absence of some wrongful conduct by such an employee, there is no proof that U.S. Bank improperly hired, supervised, or trained an "incompetent" employee.   Ms. Pugh has not offered any evidence or argument that U.S. Bank negligently hired, supervised or retained any incompetent employee.   As discussed *supra*, none of the torts claims is supported by any evidence, and cannot survive the well-supported motion for summary judgment.

6. *Trespass*

Ms. Pugh asserts that U.S. Bank is liable for trespass because the bank "sent in a realtor to trespass on Defendant property under the guise and deception of 'showing' the home."  (Doc. 2, p. 12)   Under Alabama law, a trespass is generally defined as a wrong against the right of possession, and requires a showing that the alleged trespasser intentionally invaded the property and adversely affected the plaintiff's "exclusive possession" of the property.   AmSouth Bank, N.A. v. City of

Mobile, 500 So. 2d 1072, 1075 (Ala. 1986).   Once a foreclosure sale has been

completed, entry onto the property cannot be deemed a trespass:

> In Alabama, however, a title dispute cannot be tried in a trespass
> action.   *See Griffin v. Bozeman*, 173 So. 857, 860 (Ala.1937) (stating
> that "[t]his action [of trespass] cannot be used to try disputed title");
> *Sadler v. Ala. Great S. Ry. Co.*, 85 So. 380 (Ala.1920) (stating "[t]he
> title to the land in question cannot be tried or determined in a personal
> action like this [trespass]").  Under Alabama law, when a bank
> forecloses on property, the mortgagor has the right to redeem the
> property, but the bank retains the title to the property and has the right
> to possession of the property, and the right to enter the mortgaged
> property at will.   Accordingly, upon foreclosure, a bank's "title and
> right to possession are an absolute defense to an action for trespass."
> *Mann,* 694 So.2d at 1385.   And, as discussed above, even where the
> validity of the foreclosure is challenged, the vehicle for that challenge
> is a suit for wrongful foreclosure/breach of the mortgage contract, not
> trespass.   *See Griffin*, 173 So. at 860; *see also* Am. Jr. 2d Trespass § 62
> (stating "[e]ven one who holds a property under a colorable claim of
> ownership is not subject to a trespass action by the true owner").

Dysart v. Trustmark Nat'l Bank, 2014 WL 3543698 (N.D. Ala. July 15, 2014).

The court already has determined, in examining the claims for wrongful

foreclosure and breach of contract, that the foreclosure was proper, and Ms. Pugh

thereafter did not own the property.   The counterclaim defendants also have

demonstrated that, while Ms. Pugh occupied the house pursuant to a lease

agreement, the lease agreement and addendum provided for FHLMC to enter the

property "for viewing and inspection by prospective purchasers" and other reasons relating to the typical landlord-tenant agreement.   (Doc. 13-2, p. 79). Accordingly, the trespass claim is due to be dismissed.

7.   *Declaratory Judgment*

The counterclaim asserted by Ms. Pugh for declaratory judgment is nothing more than a restatement of her allegations for breach of contract: She seeks a declaration that the counterclaim defendants "failed to comply with the notice requirements of the Note and Mortgage." (Doc. 2, p. 12).   Ms. Pugh is not entitled to any such declaration.   As discussed at length *supra*, the letters sent to Ms. Pugh provided the proper notice of an intent to accelerate the loan, notice that the loan was accelerated, and notice of the foreclosure sale.   Accordingly, the claim seeking a declaratory judgment is without merit and is due to be dismissed.

## CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the governing case law, and in light of Ms. Pugh's failure to establish a *prima facie* case of her federal statutory claims, her state-law contract claims, or her tort claims, this court determines that the plaintiff's motion for summary judgment (doc. 13) against Pugh is due to be GRANTED, and the plaintiff is entitled

to summary judgment in its favor on the claim for ejectment.   Ms. Pugh's motion for summary judgment on her counterclaims (doc. 15) is due to be DENIED.   The motion for summary judgment by plaintiff and counterclaim defendants against Pugh's counterclaims is due to be GRANTED, and all of Ms. Pugh's counterclaims are due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED the 11th day of August, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE